## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | |
|---|---|
| JIMMY WAYNE BOOTHE, IN HIS CAPACTY AS ADMINISTRATOR OF THE ESTATE OF JIMMY AARON BOOTHE, | ) ) ) ) ) |
| PLAINTIFF, | ) CIVIL ACTION NO.: ) ) |
| v. | ) JURY DEMAND ) |
| JEFFERSON COUNTY CORRECTIONS OFFICER FINN, JEFFERSON COUNTY CORRECTIONS OFFICER JOHNSON, JEFFERSON COUNTY CORRECTIONS OFFICER FOSTER, SYMBOCOR, LLC., d/b/a SYMBOCOR CORRECTIONAL HEALTHCARE, AND FICTITIOUS DEFENDANTS 1-10, | ) ) ) ) ) ) ) ) ) ) ) ) |
| DEFENDANTS. | ) ) |

## COMPLAINT

**I.   JURISDICTION AND VENUE**

1.   This action arises under the Fourteenth Amendment to the United States Constitution, federal law, including 28 USC §2201 and 42 USC §§1983 and 1988, and Alabama state law.

1

2.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 USC §1367 because Plaintiff's state and federal law claims arise from the same set of operative facts.

3.    Venue is proper in the Northern District of Alabama because the injuries complained of occurred within this district consistent with 28 U.S.C. §1391(b).

## II.  PARTIES

4.    Plaintiff brings this suit solely in his capacity as the Administrator of the Estate of Jimmy Aaron Boothe, the decedent in this matter.

5.    Defendant SymboCor, LLC., d/b/a SymboCor Correctional Healthcare is the health services provider for the Jefferson County jails. At all times relevant to this action, Defendant and its staff acted under color of law in that they performed traditional state functions as the provider of medical care to individuals incarcerated at the Jefferson County Jail, Bessemer Division.

6.    Fictitious Defendants 1-10 are employees of Defendant SymboCor who spoke with members of Boothe's family regarding Boothe being suicidal and needing to be watched.

7.    Individual Defendant Finn is a Correctional Officer employed by the Jefferson County Sheriff's Department at the Jefferson County Jail, Bessemer Division.

8. Individual Defendant Johnson is a Correctional Officer employed by the Jefferson County Sheriff's Department at the Jefferson County Jail, Bessemer Division.

9. Individual Defendant Foster is a Correctional Officer employed by the Jefferson County Sheriff's Department at the Jefferson County Jail, Bessemer Division.

### III. FACTS

10. The Decedent, Jimmy Aaron Boothe, was arrested on or around January 28, 2025.

11. At the time of his arrest, Boothe had been married for a little over half a year to a woman with a severe drug addiction. Boothe also had begun using drugs.

12. On or around January 26, 2025, Boothe's wife stole his car and took money from him. Boothe then learned that his wife was staying with a man in a camper in Bessemer, Alabama. On January 27, 2025, Boothe went to the location and retrieved his car, but Boothe's wife remained at the camper.

13. However, early the next morning, January 28, 2025, Boothe's wife called him in a panic and asked him to come get her, according to what Boothe later told family members. According to what Boothe told family members, she told him that she had robbed the man she was staying with and hit him in the head and that she needed Boothe's help.

14.     After receiving the call from his wife, Boothe returned to the camper in the early morning hours of January 28, 2025.

15.     The criminal complaints against Boothe allege that he assaulted the man who owned the camper, struck him repeatedly with a blunt object, and cut him with a knife before binding his hands and feet, then chained and padlocked the trailer door. The criminal complaints further accuse Boothe of forcibly kidnapping his wife.

16.     Boothe was arrested later on the morning of January 28, 2025 while sleeping in a vehicle with his wife on farm property owned by his family near Woodstock, Alabama.

17.     Either during or after his arrest, Boothe attempted suicide by taking an overdose of fentanyl that he received from his wife. He was revived in the field with Narcan and transported to UAB Hospital West.

18.     Hospital records indicate that Boothe "took a bottle of Nifedipine 90mg and ingested an unknown quantity of fentanyl mixed with water that he took away from his wife." The hospital noted this as a "suicide attempt by drug overdose."

19.     On day 3 of his hospitalization, January 31, 2025, Boothe once again attempted suicide. He "locked himself in the bathroom" and "once in the bathroom … began smashing his head into the mirror to break glass which he then used to cut his bilateral upper extremities causing deep lacerations and acute blood loss anemia resulting in hemorrhagic shock," according to hospital records.

20. The hospital records report that Boothe stated he "was still suicidal b/c his wife was everything to him and if they couldn't be together he didn't want to live" and that "his family hated his wife b/c she was using drugs but he loved her to death […] the only reason they argued was that she was trying to come off drugs and he didn't know about it and she left him and took his car but he was able to find her in a drug house and she agreed to go with him and he never kidnapped her."

21. The hospital records further state that once the police showed up "she wanted to leave and he decided to take his life b/c of the above."

22. The hospital records include the following Plan:

> I see no difficulty in him being treated in the jail setting so long as 1) suicide precautions are afforded, with **instruction to prevent his access to anything** sharp **with which he could** harm himself, **hang himself**, otherwise inflict significant bodily injury, or overdose; 2) **medicines (as warranted) should be monitored to prevent his accumulating such medicines with which he could again overdose** (liquids, dissolving forms, injectables may be more optimal); 3) regular contact with a qualified psychiatric provider is afforded to prescribe and adjust psychotropic medicines as may become indicated. If he is not discharged (per court order) to jail, would strongly advise Inpatient psychiatric hospitalization.

(emphasis added).

23. Boothe was discharged to the Jefferson County Jail, Bessemer Division on or around February 1, 2025.

24. Defendant SymboCor and its agents, including the fictional defendants, were provided with discharge information consistent with the information from Boothe's medical records quoted above.

25. Boothe was initially placed on suicide watch protocol for around 1-2 weeks.

26. Suicide watch protocol typically involves removing every possible instrument of self-harm from an inmate's cell, including sheets, clothing, and anything else that an inmate might use to harm himself.

27. Suicide protocol also requires the inmate to be visually observed at least every thirty minutes and every fifteen minutes to ensure that the inmate is not trying to harm himself.

28. After 1-2 weeks, Boothe was transferred to general population and taken off suicide watch protocol.

29. Boothe's daughter and sister, concerned about Boothe being taken off suicide protocol, called the jail repeatedly, speaking with Defendant Foster, among others, to inform jail officials and medical staff that Boothe was suicidal and that he needed to be watched.

30. However, Boothe was not returned to suicide protocol.

31. In general population, Boothe was able to hoard medication, and he attempted suicide again on April 2, 2025 by taking an intentional overdose of hoarded medications, which resulted in him falling out of his top bunk while unconscious

and suffering facial injuries. Boothe was then hospitalized and underwent surgery at UAB Highlands Hospital.

32. Following his discharge from UAB Highlands Hospital in early April 2025, Boothe was returned to the jail and housed in an observation cell in the medical unit.

33. Prior to being taken to the medical unit, Defendant Corrections Officers Finn and Johnson brought Boothe back to his former cell in general population to retrieve his belongings.

34. In the presence and hearing of Corrections Officers Finn and Johnson, loud enough so that inmates throughout the tier could hear him, Boothe made statements clearly communicating his attempt to commit suicide, including "I'm going to check out of here one way or another," or words to that effect.

35. However, despite having actual knowledge of Boothe's intent to commit suicide, Corrections Officers Finn and Johnson failed to take action to cause Boothe to be placed on suicide watch, failed to take action to prevent him from having access to means of self-harm including a bedsheet and a moveable plastic chair, and failed to take action to ensure that he was observed.

36. The cell in the medical unit included the following means of self-harm: a moveable plastic chair; a sheet that could be torn to fashion a cord; and a light fixture strong enough to support the weight of a human body, with a gap between the light fixture and the ceiling through which a ligature could be attached.

37. Despite having actual knowledge of Boothe's suicidal tendencies, Defendant SymboCor and the fictional defendants employed by Defendant SymboCor failed to take action to cause Boothe to be placed on suicide watch, failed to take action to prevent him from having access to means of self-harm, and failed to take action to ensure that he was observed.

38. Between his discharge from UAB Highlands Hospital and April 12, 2025, when Boothe next attempted suicide, he sent electronic communications through the jail communication terminals to family members, including his daughter and sister, expressing suicidal wishes.

39. Boothe's sister and daughter repeatedly called the prison and informed prison officials, including Defendant Foster, that Boothe was suicidal and that he needed to be watched.

40. However, despite having actual knowledge that Boothe was suicidal, Corrections Officer Foster failed to take action to cause Boothe to be placed on suicide watch, failed to take action to prevent him from having access to means of self-harm, and failed to take action to ensure that he was observed.

41. On several occasions between his discharge from UAB Highlands Hospital and April 12, 2025, Boothe's sister called, was transferred to medical staff employed by Defendant SymboCor, and informed employees of Defendant SymboCor,

including fictional defendants, that Boothe was suicidal and that he needed to be watched.

42. However, medical staff failed to take action to cause Boothe to be placed on suicide watch, failed to take action to prevent him from having access to means of self-harm, and failed to take action to ensure that he was observed.

43. Boothe's cell in the medical unit was an observational cell capable of being observed on camera, but the single individual assigned to monitor the camera feeds from the control room is unlikely to observe an inmate who is not specifically under suicide watch protocol, as this individual has numerous other inmates to observe.

44. After being placed in the cell in the medical unit, Boothe fixed a strip of torn sheet in a loop around the fluorescent light fixture in his cell. The loop of torn sheet remained around the light fixture for at least four days and was readily observable to every individual working in the medical unit, including employees of Defendant SymboCor who visited the cell daily for pill call.

45. On or around April 12, 2025 between eight and ten PM, Boothe tied a cord made of a ripped length of sheet around the loop he'd previously attached to the light fixture and hung himself in his cell.

46. Another inmate who was out of his cell observed Boothe hanging and asked one of the inmates who was in a cell to hit the intercom button in that cell.

47.  Corrections officers and nursing staff responded, and, after attempts at resuscitation, Boothe was transported by ambulance to UAB West hospital.

48.  After eventually being declared brain dead, Boothe was taken off life support and passed away on April 21, 2025.

**IV.  Cause of Action**

    **A.  14th Amendment to the U.S. Constitution via 42 USC §1983**

49.  Plaintiff brings this claim pursuant to the Fourteenth Amendment via 42 USC §1983 against all individually named and fictitious defendants, including the Corrections Officer defendants and the fictional defendants employed by Defendant Symbocor.

50.  At all times relevant to this action, Defendants acted under color of state law.

51.  The fictional Defendants employed by Defendant Symbocor performed traditional state functions in the Jefferson County Jail, Bessemer Division.

52.  Defendants were subjectively aware of a serious risk that Boothe would attempt to take his own life. However, Defendants consciously disregarded that risk, failed to take action to cause Boothe to be placed on suicide watch, failed to take action to prevent him from having access to means of self-harm including a bedsheet and a moveable plastic chair, and failed to take action to ensure that he was observed.

53.  By failing to take action to cause Boothe to be placed on suicide watch, by failing to take action to prevent him from having access to means of self-harm

including a bedsheet and a moveable plastic chair, and by failing to take action to ensure that he was observed, Defendants acted in deliberate indifference to a strong likelihood that Boothe would attempt to take his own life.

54. Defendants' deliberate indifference was the proximate cause and cause in fact of Boothe's death.

> **B. Alabama State Law – Negligence and/or Wantonness and/or Willfulness**

55. Plaintiff brings this claim pursuant to Alabama state law against Defendant SymboCor and the fictional individual defendants employed by Defendant SymboCor.

56. The medical providers employed by Defendant SymboCor, including the fictional defendants, knew or should have known of Boothe's suicidal tendencies; however, they negligently, wantonly, or willfully failed to take action to cause Boothe to be placed on suicide watch, negligently, wantonly, or willfully failed to take action to prevent him from having access to means of self-harm including a bedsheet and a moveable plastic chair, and negligently, wantonly, or willfully failed to take action to ensure that he was observed.

57. Defendant SymboCor is liable for the acts and omissions of its agents and employees acting within the line and scope of their duties.

58. The risk to Boothe from Defendants' and its agents' negligent, willful, and/or wanton conduct was foreseeable.

59. Defendants' and fictitious defendants' conduct was negligent, willful, and/or wanton and carried on with a reckless and/or conscious disregard of the rights and safety of others.

60. Defendants' negligent, willful, and/or wanton conduct was both the cause in fact and the proximate cause of Boothe's death.

## V. Damages

61. Plaintiff is now suffering, and will continue to suffer, irreparable injury from Defendants' unlawful conduct as set forth herein unless enjoined by this Court.

62. Plaintiff has experienced extreme emotional distress, severe emotional and physical pain and anguish, embarrassment, humiliation, shame, damage to reputation, damage to his personal and family relationships, loss of income, legal fees, medical expenses, lost earning potential, and other pecuniary losses as a consequence of Defendants' unlawful conduct.

63. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for declaratory judgment, injunctive relief, compensatory, and punitive damages is his only means of securing adequate relief.

## VI. Request for Relief

Plaintiff seeks the following relief:

Award a judgment in his favor against Defendants in an amount in excess of the jurisdictional limits of this court for compensatory damages, including damages

for severe emotional and physical pain and anguish, embarrassment, humiliation, shame, damage to reputation, damage to his personal and family relationships, loss of income, legal fees, medical expenses, lost earning potential, future rehabilitation expenses, future medical costs, future counseling, and other pecuniary losses as a consequence of Defendants' unlawful conduct;

Award punitive damages against the Defendants to punish and deter further wrongdoing;

Grant injunctive relief to as necessary to affect this Court's judgment and prevent the recurrence of the harms alleged herein;

Award Plaintiff reasonable attorney's fees pursuant to 42 U.S.C. § 1988, including a reasonable attorney's fee for work preliminary to and necessary to the institution of this action;

Award Plaintiff all litigation expenses, cost, prejudgment and post judgment interest as provided by law; and,

Such other and further relief as the Court deems just and proper.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

Dated: 7/9/2025

                        Respectfully submitted,

                        */s/ L. William Smith*
                        Jon C. Goldfarb asb-5401-f58j
                        L. William Smith asb 8660-a61s

                                          Christina M. Malmat asb-1214-y44q
                                          Counsel for Plaintiff

**OF COUNSEL:**
Wiggins, Childs, Pantazis, Fisher,
& Goldfarb, LLC
301 19th Street North
Birmingham, AL 35203
Telephone No.: (205) 314-0500
Facsimile: (205) 254-1500
jcg@wigginschilds.com
wsmith@wigginschilds.com
cmalmat@wigginschilds.com